# IN THE UNITED STATES DISTRICT COURT OF
# SOUTHERN DISTRICT OF OHIO
# CINCINNATI DIVISION

| | |
|---|---|
| DALTON MERRITT<br>244 Kathryn Court<br>Washington Court House, OH 43160,<br><br>    Plaintiff,<br><br>v.<br><br>BASF CORPORATION<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219,<br><br>    and<br><br>GATX CORPORATION<br>c/o The Prentice-Hall Corporation System, Inc.<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215,<br><br>    And<br><br>ILLINOIS CENTRAL RAILROAD<br>COMPANY d/b/a CN,<br>c/o Illinois Corporation Service Company<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62703<br><br>    Defendants. | CASE NO.<br><br>JURY DEMAND |

## COMPLAINT WITH JURY DEMAND

COMES NOW the Plaintiff, DALTON MERRITT, by and through his attorneys, and for his Complaint states the following:

1. Dalton Merritt is a natural person and resident and citizen of Washington Court House, Fayette County, Ohio.

2. Defendant BASF Corporation ("BASF") is a foreign corporation registered to do business in the State of Ohio and can be served through its registered agent, CT Corporation System, at 4400 Easton Commons Way, Suite 125 Columbus, OH 43219.

3. Defendant GATX Corporation ("GATX") is a foreign corporation registered to do business in the State of Ohio and can be served through its registered agent, The Prentice-Hall Corporation System, Inc., at 50 West Broad Street, Suite 1330 Columbus, OH 43215.

4. Defendant Illinois Central Railroad Company d/b/a CN ("Illinois Central/CN"), a foreign corporation, is an interstate railroad doing business in the state of Ohio, and owns railroad yards, lines, tracks, engines, and boxcars, which it maintains and operates in interstate commerce within the jurisdiction of this Court. Defendant Illinois Central/CN can be served through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Dr. Springfield, IL 62703.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. Venue in this action properly lies in this judicial district where a substantial number of the events, actions, or omissions giving rise to Plaintiff's claims occurred. At all times material hereto, Defendants were engaged in activities substantially affecting interstate commerce and committed tortious acts upon Plaintiff in this District.

7. Defendants are subject to personal jurisdiction in this District as Defendants systematically and continuously conduct business in this District and throughout the United States, including in Ohio. They are further subject to personal jurisdiction because the actions or omissions leading to Plaintiff's injuries occurred, in whole or in part, in the state of Ohio. Further,

Defendant BASF contracted to ship the product in the car to the plant in Ohio where Plaintiff was injured and both Defendants BASF and GATX were required by Federal Regulations to ensure that the railcar was in proper condition and could be unloaded without spraying the product violently.

8. On or about March 5, 2019, Defendant BASF placed its tank car, leased from Defendant GATX and identified as GATX031085, into the stream of commerce, leaving out of Geismar, Louisiana and headed to Greenfield, Ohio, on a train.

9. This tank car was filled with, toxic, dangerous, and deadly substances, specifically Voranate™ T-80 Type I TDI (Voranate TDI). The United States Department of Transportation classifies this product as a 6.1 classification UN 2078 POISON with INHALATION HAZARD.

10. Defendant BASF, and its employee who was responsible for inspecting and preparing the subject tank car for transportation, failed to completely tighten the tank car valves, failed to ensure that the valves on the tank car were completely closed to prevent a leak, failed to leak check the valves, or properly inspect the car to ensure that the valves were in proper working order and in compliance with U.S.D.O.T. regulations and other regulations and Defendant BASF further failed to have sufficient procedures and employees in place to ensure that it was not exposing Americans to the toxic substances it was shipping across the country. Specifically, failed to check for leaks, inspect the valves to ensure to ensure they were working as intended and not placing an unsafe rail tank car into transportation as prescribed in United States Department of Transportation Regulations 49 CFR 173.31(d), 171.2(e), 173.31(a), 180.509(b) and 171.7 (incorporated by reference) AAR Manual of Standards and Recommended Practices, Specifications for Tank Cars M-1002.

11. In addition to conducting the tank car inspection, Defendant BASF was required to certify that the hazardous material shipment was properly classed, described, packaged, marked, labeled and in condition for shipment as required by the DOT regulations. This certification is required in writing and must be performed by a person familiar with the loading operation, and properly trained as a hazardous material employee. This is required by 49 CFR 172.204(a), 172.2(i), 172.2(j), 172.702 and 172.704. This is one of the most important requirements of the shipper, to ensure that all Federal Requirements are met, prior to offering the tank car for transportation.

12. The subject tank car made its way across various states from Louisiana to Ohio, arriving in Greenfield on train CNC24243 on or around March 7, 2019.

13. On or around March 13, 2019, Mr. Merritt was employed by Adient US, LLC ("Adient") as a Chemical Processing Technician and was working in and around the Adient property in Greenfield, Ohio.

14. On that day, Mr. Merritt was tasked with unloading the subject tank car, identified as GATX031085, containing Voranate TDI, a classification of a 6.1 POISON with Inhalation Hazard.

15. While Mr. Merritt performed his job duties, the Voranate TDI began to surge from the subject tank car, spraying Mr. Merritt.

16. At great risk to his own personal safety, Mr. Merritt fought to close the defective, broken, or defectively installed valve from which the Voranate TDI had erupted.

17. As soon as he had shut off the source of the spill, Mr. Merritt activated Adient's chemical spill alarm and hurried to decontaminate but already began to cough heavily and experience irritation in his eyes and throat.

18. Mr. Merritt was taken to Adena Greenfield Medical Center by EMS for further decontamination and evaluation after first being decontaminated by Highland County HAZMAT.

19. Adient contacted its environmental contractor, Alltranstek, L.L.C., to investigate the reported incident.

20. Upon inspection by the environmental contractors, it was discovered that a faulty valve on the subject tank car was the cause of the Voranate TDI spill.

21. As a result of the exposure to Voranate TDI, Mr. Merritt was diagnosed with reactive airway dysfunction syndrome and toxic effect of homologues of benzene.

22. Mr. Merritt was released to return to work under the condition that he was not to be exposed to any inhaled chemical exposure; However, he was again occupationally exposed to fumes, requiring medical care due to uncontrollable coughing and shortness of breath as a result of these exposures.

23. Mr. Merritt has been unable to return to work since July of 2019 and has received the recommendation from his doctors that he should not return to work where there is any potential TDI exposure.

### COUNT I - AS TO DEFENDANT GATX CORPORATION: NEGLIGENCE

24. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as though fully realleged herein.

25. Defendant GATX was charged with a continuing duty to exercise reasonable and ordinary care to maintain and inspect its tank cars in such a manner as to prevent the exposure of toxic substances to the public, including Mr. Merritt. Defendant GATX was required as the car owner to manage the maintenance of its fleet of cars, to develop plans, and to set inspection intervals consistent with the failure mode and failure rate for each component on the car.

26. The injuries sustained by Mr. Merritt were directly and proximately caused by the negligence of Defendant GATX, including its agents or employees, by committing one or more of the following acts or omissions:

 a) In failing to ensure that its employees were trained to properly secure tank cars and equipment that may contain toxic substances;

 b) In failing to provide a sufficient number of employees to ensure that its tank cars and equipment were properly secured and would not leak;

 c) In failing to properly tighten, seal, and secure its tank cars;

 d) In failing to have proper procedures in place to ensure that its tank cars and equipment were safe and secure for shipment;

 e) In failing to supervise its employees to ensure they were performing the required job in a safe and proper manner;

 f) In failing to sufficiently inspect its cars and equipment, or those of its clients and contractors, to ensure that the cars were not leaking dangerous and toxic fumes and gasses;

 g) In failing to sufficiently maintain its cars and equipment to ensure that the cars were not leaking dangerous and toxic fumes and gasses;

 h) In failing to warn Plaintiff of reasonably foreseeable hazardous conditions existing with Defendant's equipment;

 i) By allowing unsafe practices to become the standard practice;

 j) It failed to follow the Association of American Railroads Tank Car Committee standards and guidelines;

 k) In failing to examine or perform a reasonable inspection of the tank car before shipping, in violation of 49 CFR § 173.31, for which the Defendant is strictly liable;

 l) In failing to ensure that rail tank car GATX31085 was fit for service; and

 m) In failing to ensure that the defective tank car was inspected and tested prior to departing the BASF facility as required by 49 CFR 180.509(b).

27. One or more of Defendant's negligent acts or omissions as set forth above constituted a breach of its duty to exercise ordinary and reasonable care in the operation of its tank cars carrying toxic substances, and was a contributing cause of the injuries, damages, harms and losses suffered by Mr. Merritt as set forth in this Complaint.

## COUNT II - AS TO DEFENDANTS GATX CORPORATION

## NEGLIGENCE PER SE- VIOLATION OF SAFETY STATUTE OR REGULATION

### (Code of Federal Regulations and Safety Standards)

28. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as though fully realleged herein.

29. At the time of the events made basis of this suit, the Department of Transportation had issued Federal Regulation standards that required Defendant GATX to follow regulations specifically established for the safe and secure transportation of hazardous materials in commerce including by rail car.

30. The purpose of such standards and regulations is to protect the public and employees working in the transportation industry with hazardous materials placed in commerce, such as Dalton Merritt, from exposure to the hazardous materials.

31. Pursuant to the Federal Regulation in 49 CFR 180.507 and 180.509(b), Defendant GATX was required to maintain the railcar "Fit for Service" ensuring that railcar was in proper and safe condition for transportation. All parts including valves on the car must be working as intended before offering the railcar in transportation.

32. When such failure to completely close and secure a rail car results in an identifiable release of hazardous material to the environment, and/or when the lack of securement of any closure to a tool-tight condition is detected at any point, there is a rebuttable presumption that a

proper inspection was not performed. When a valve on a railcar does not function as intended, it must be inspected and tested by an AAR Certified Person. If the valve is found to be defective it must be replaced by a certified AAR facility and replaced by an AAR approved device that has been tested. After applying the new device, it must be again tested to ensure that it operates as intended.

33. Defendant GATX failed to comply with various regulations including those found at 49 C.F.R. §§ 171, 172, 173, 179 and 180 as well as requirements contained in Association of American Railroads (AAR) Manual of Standards and Recommended Practices, Specifications for Tank Cars (M1002).

34. Defendant GATX's actions were in violation of federal regulations designed and intended for the protection of Dalton Merritt, and Defendant GATX was therefore negligent per se under Ohio law.

35. Defendant GATX negligence per se was a proximate and producing cause of the injuries sustained by Dalton Merritt, as alleged.

## COUNT III - AS TO DEFENDANT BASF CORPORATION: NEGLIGENCE

36. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as though fully realleged herein.

37. Defendant BASF was charged with a continuing duty to exercise reasonable and ordinary care to maintain and inspect its tank cars in such a manner as to prevent the exposure of toxic substances to the public, including Mr. Merritt.

38. The injuries sustained by Mr. Merritt were directly and proximately caused by the negligence of Defendant BASF, including its agents or employees, by committing one or more of the following acts or omissions:

a) In failing to ensure that its employees were trained to properly secure tank cars and equipment that contained toxic substances and Ensuring that the hazardous material training included a proper inspection of the service equipment on tank cars and corrective actions to be taken when such equipment is not working as intended;

b) In failing to provide a sufficient number of employees to ensure that its tank cars and equipment were properly secured and were not leaking;

c) In failing to properly tighten, seal, and secure its tank cars;

d) In failing to have proper procedures in place to ensure that its tank cars and equipment were safe and secure for shipment;

e) In failing to supervise its employees to ensure they were performing the required job in a safe and proper manner;

f) In failing to sufficiently inspect its cars and equipment, or those of its clients and contractors, to ensure that the cars were not leaking dangerous and toxic fumes and gasses;

g) In failing to sufficiently maintain its cars and equipment to ensure that the cars were not leaking dangerous and toxic fumes and gasses and BASF failed to perform a proper "Certification" of railcar GATX 31085, prior to offering the railcar for transportation, that contained a "POISON INHALATION HAZARD";

h) In failing to warn Plaintiff of reasonably foreseeable hazardous conditions existing with Defendant's equipment;

i) By allowing unsafe practices to become the standard practice;

j) In failing to follow the United States Department of Transportation Regulations and the Association of American Railroads Specification for Tank Cars (M-1002) to ensure that the tank car met the DOT specifications for the tank car when it was offered for transportation; and

k) In failing to examine or perform a reasonable inspection of the tank car before shipping, in violation of 49 CFR § 173.31, for which the Defendant BASF is strictly liable.

39. One or more of Defendant's negligent acts or omissions as set forth above constituted a breach of its duty to exercise ordinary and reasonable care in the operation of its tank

9

cars carrying toxic substances, and was a contributing cause of the injuries, damages, harms and losses suffered by Mr. Merritt as set forth in this Complaint.

## COUNT IV - AS TO DEFENDANT BASF CORPORATION:
## NEGLIGENCE PER SE - VIOLATION OF SAFETY STATUTE OR REGULATION
### (Code of Federal Regulations and Safety Standards)

40. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as though fully realleged herein.

41. At the time of the events made basis of this suit, the Department of Transportation had issued Federal Regulation standards that required Defendant BASF to follow regulations specifically established for the safe and secure transportation of hazardous materials in commerce.

42. The purpose of such standards and regulations is to prevent and protect the public and employees working in the transportation industry with hazardous materials placed in commerce, such as Dalton Merritt, from exposure to the hazardous materials.

43. Pursuant to the Federal Regulation in 49 C.F.R. § 173.31, Defendant BASF was required to inspect its rail car to ensure that it was in proper and safe condition for transportation, including an inspection for leaks or other potential defects.

44. When such failure to completely close and secure a rail car results in an identifiable release of hazardous material to the environment, and/or when the lack of securement of any closure to a tool-tight condition is detected at any point, there is a rebuttable presumption that a proper inspection was not performed by the offeror, here BASF Corporation.

    a) BASF had a duty to perform a "Shipper's Certification" under 49 CFR 172.204 and 171.2(i). This is a final review of the rail car prior to being offered for transportation, to ensure that all Federal Regulations were in compliance. The shipper's certification must be performed by someone who has been involved in the loading process and signs a written confirmation stating that the rail car meets all Federal Requirements. This

is the most important part of the loading process, ensuring that the railcar meets all Federal Requirements.

45. Defendant BASF failed to comply with various regulations including those found at 49 C.F.R. §§ 171, 172, 173, 174, 179 and 180 or the applicable AAR tank car standards.

46. Defendant BASF's actions were in violation of federal regulations designed and intended for the protection of Dalton Merritt, and BASF was therefore negligent per se under Ohio law.

47. Defendant BASF's negligence per se was a proximate and producing cause of the injuries sustained by Dalton Merritt, as alleged.

**COUNT V - AS TO DEFENDANT ILLINOIS CENTRAL RAILROAD COMPANY d/b/a/ CN: NEGLIGENCE**

48. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as though fully realleged herein.

49. The injuries sustained by Mr. Merritt were caused, in whole or in part, by the negligence of Defendant Illinois Central/CN, including its agents or employees, by committing one or more of the following acts or omissions:

    a)     In failing to sufficiently inspect its cars and equipment, or those of its clients and contractors, to ensure that the cars were not leaking dangerous and toxic fumes and gasses;

    b)     In failing to sufficiently maintain its cars and equipment, or those of its clients and contractors, to ensure that the cars were not leaking dangerous and toxic fumes and gasses;

    c)     In failing to warn Plaintiff of reasonably foreseeable hazardous conditions existing with Defendant's equipment;

    d)     In allowing unsafe practices to become the standard practice among its employees, agents, contractors and/or clients;

11

  e) In failing to enforce existing procedures and instructions for operating safely during the inspection and shipment of hazardous material, and for failing to observe and comply with Defendant's own safety rules and/or safety standards and/or its General Code of Operating Rules;

  f) In failing to properly educate or instruct its contractor, Defendant BASF, regarding Defendant's safety rules and/or General Code of Operating Rules, for the protection of employees;

  g) In accepting transportation or transport by rail of a shipment of hazardous material that is not in conformance with the requirements of 49 CFR § 174 and its subparts, including 49 CFR § 174.3 and 174.9; and

  h) In such further ways as may be proven at the trial of this cause.

50. One or more of Defendant's negligent acts or omissions as set forth above constituted a breach of its duty to exercise ordinary and reasonable care in the transportation or transport by rail of a shipment of toxic substances, and was a contributing cause of the injuries, damages, harms and losses suffered by Mr. Merritt as set forth in this Complaint.

## COUNT VI – ILLINOIS CENTRAL RAILROAD d/b/a/ CN: VIOLATION OF SAFETY STATUTE OR REGULATION

51. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as though fully realleged herein.

52. At the time of the events made basis of this suit, the Department of Transportation had issued Federal Regulation standards that required Defendant Illinois Central/CN to follow and observe rules specifically applicable to the safe transportation of hazardous materials in or on rail cars. These regulations specifically required Defendant Illinois Central/CN to adopt and observe rules to ensure inspection and safe transportation of hazardous materials prior to the acceptance of such materials.

53. Compliance with the Federal Regulations required Defendant Illinois Central/CN to train and educate its employees, supervisors and affiliated contractors in the purpose, implementation and enforcement of said Rules and Regulations.

54. At all relevant times, there were in full force and effect, additional federal regulations in 49 CFR §174 and its subparts, including 49 CFR §§ 174.3 and 174.9, related to accepting transportation or transport by rail of a shipment of hazardous material, which were also promulgated for the safety of railroad workers and the public.

55. Defendant Illinois Central/CN violated 49 CFR §§ 174.3 and 174.9 by accepting from Defendant BASF the transportation and shipment of hazardous material that was not in conformance with the safety and security requirements of the regulations and suitable for transportation or shipment. Defendant Illinois Central/CN further violated the Rules and Regulations in its inspection of the rail car containing the hazardous material, which did not meet the federal requirements.

56. As a direct result, in whole or in part, of one or more violations of I Defendant Illinois Central/CN's General Code of Operating Rules and/or its Operating Rules and/or the Federal Regulations, Mr. Merritt was injured as alleged. Defendant Illinois Central/CN were therefore at fault by operation of law, and are thus not entitled to any percentage reduction or offset of the total damages awarded in this case, notwithstanding any alleged fault of Dalton Merritt, which fault Plaintiff denies.

## DAMAGES

57. As a result of his injuries caused by the Defendants, Mr. Merritt has suffered in the past and will continue to suffer, pain, discomfort, and respiratory problems in the future.

58. Mr. Merritt has sustained long-term and likely permanent impairment that can reasonably be expected to adversely affect his future employment prospects.

59. Mr. Merritt's overall quality of life, both for the remainder of his working life expectancy and into his retirement years for the balance of his natural life expectancy are severely diminished.

60. Mr. Merritt seeks damages for such past and future pain, suffering, disfigurement, and impairment, together with compensation for the trauma, anxiety and emotional suffering experienced from his injuries and their required treatments, along with their attendant risks, complications, and rehabilitation requirements.

61. As a result of the injuries caused by the Defendant, Mr. Merritt has suffered loss of earning capacity and fringe benefits in the past.

62. Mr. Merritt is also reasonably likely to sustain diminished earning capacity and fringe benefits in the future as a result of the injuries. He seeks compensation for these pecuniary losses as may be proven at trial.

63. As a result of the injuries caused by the Defendant, Mr. Merritt was subjected to extensive medical treatment and has incurred medical expenses and incidental expenses.

64. Furthermore, Mr. Merritt will incur additional medical expenses and incidental expenses in the future.

65. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein and that upon final hearing, judgment be rendered in favor of this Plaintiff and against this Defendant for an amount in excess of jurisdictional limits, post-judgment interest against all Defendants, and his costs herein expended.

Dated: JANUARY 12, 2020

Respectfully submitted,

*/s/Kevin E. McDermott*
KEVIN E. MCDERMOTT (0027813)
McDermott & Hickey, LLC
20525 Center Ridge Road, Ste. 200
Rocky River, OH 44116
Telephone: (216) 712-7452
Facsimile: (216) 916-9238
Email: kevin@mcdermotthickeylaw.com

Attorney for Plaintiff