UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DALTON MERRITT,

        Plaintiff,                                Case No. 1:21-cv-67
                                                    JUDGE DOUGLAS R. COLE

       v.

BASF CORPORATION, et al.,

        Defendants.

## OPINION AND ORDER

Federal law reigns supreme. Congress can displace state law, including state-law remedies, for the matters it regulates. Generally speaking, this falls under the rubric of preemption. Defendants BASF Corporation ("BASF") and GATX Corporation ("GATX") seek dismissal here because the Hazardous Materials Transportation Act (HMTA), and the regulations the Department of Transportation has adopted under that Act (the Hazardous Material Regulations or HMRs), preempt the state law causes of action that Merritt advances against them in his Complaint. For the reasons discussed below, the Court concludes that Defendants are correct about some but not all of Merritt's claims. Thus the Court **GRANTS-IN-PART** and **DENIES-IN-PART** BASF's Motion to Dismiss (Doc. 26) and GATX's Motion for Judgment on the Pleadings (Doc. 31).

## BACKGROUND

Merritt worked as a chemical processing technician for Adient US, LLC. (Compl., Doc. 1, #4). One day, Adient instructed him to unload a railway tank car.

(*Id.*). BASF had leased the tank car from GATX and used it to ship a product called Voranate TDI to its customer, Adient. (*Id.* at #3). Voranate TDI is classified as a poison and is dangerous when inhaled. (*Id.*).

While Merritt unloaded the tank car, Voranate TDI began spraying from a valve on the car, hitting him. (*Id.* at #3). Merritt closed the valve, but not before he was doused. (*Id.*). He rang the chemical spill alarm and immediately started decontamination procedures, but he had already begun to cough heavily and experience eye and throat irritation. (*Id.*). EMS personnel were called to the scene. (*Id.* at #5). After further decontamination efforts, they took Merritt to Adena Greenfield Medical Center. (*Id.*).

Adeint contacted its environmental contractor to investigate the incident. (*Id.*). That investigation revealed that the tank car had a faulty valve that caused the Voranate TDI to spill during unloading. (*Id.*).

Merritt alleges that, because of his exposure to Voranate TDI that day, he has suffered "reactive airway dysfunction syndrome." (*Id.*). He claims he can no longer work in any environment where he may be exposed to inhaled chemicals. (*Id.*).

Based on these events, he asserts two Ohio law negligence claims against GATX (Counts I and II) and two against BASF (Counts III and IV). In Count I, Merritt claims GATX acted negligently in thirteen ways concerning how it loaded, inspected, and maintained the tank car. (Doc. 1, #5–7). In Count II, he alleges GATX was negligent per se by violating various HMRs in connection with its handling of the tank car. (Doc. 1, #7–8).

He largely repeats these allegations with his two claims against BASF. Count III claims that BASF acted negligently in its loading and inspection of the tank car before transport to Adient, citing eleven specific ways it did so. (*Id.*, #8–10). Count IV, meanwhile, claims that BASF was negligent per se in failing to follow various HMRs relating to its handling of the tank car. (*Id.*, #10–11).

The Defendants responded in somewhat different, but largely overlapping, ways. BASF moved to dismiss on preemption grounds. (Doc. 26). In particular, it points to the express preemption provision in the HMTA, which states that:

> [A] law, regulation, order, or other requirement of a State . . . about any of the following subjects, that is not substantively the same as a provision of this chapter . . . [or] a regulation prescribed under this chapter [(the HMR)]. . . is preempted:
>
>> (A) The designation, description, and classification of hazardous material;
>>
>> (B) The packing, repacking, handling, labeling, marking, and placarding of hazardous material;
>>
>> (C) The preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents;
>>
>> (D) The written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident;
>>
>> (E) The designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

(*Id.* at #98 (quoting 49 U.S.C. § 5125(b)(1))). According to BASF, this provision means the HMTA preempts nine of the eleven bases for Merritt's Ohio law negligence claim (Count III). (*See* Doc. 26, #104 ("Thus, Plaintiff's negligence allegations in Court III,

3

Paragraph 38(a)(-(i) of the Complaint fail because they are preempted by the HMTA")). BASF further argues that, because the HMTA does not create a private right of action, Merritt cannot indirectly create such a right by relying on an HMTA violation to establish negligence per se—disposing of the last two alleged forms of negligence in Count III and all of Count IV. (*Id.* at #106). Merritt responded (Doc. 29), and BASF replied (Doc. 30).

GATX, on the other hand, answered the Complaint. (Doc. 16). But it then moved for judgment on the pleadings. (Doc. 31). In that motion, GATX largely echoed BASF's arguments, claiming that the HMTA's preemptive effect doomed Merritt's negligence claim against GATX (all thirteen bases for it) and that the HMTA's lack of a private right of action foreclosed the negligence per se claim. (*See generally id.*). This motion is fully briefed as well.

There are a couple of other wrinkles. Merritt moved for leave to file a surreply or in the alternative disregard GATX's reply. (Doc. 34). And he moved for a status conference to discuss the pending motions. (Doc. 36). The Court takes each request before it in turn.

## STANDARD OF REVIEW

BASF moves to dismiss the Complaint for "failure to state a claim [against BASF] upon which relief can be granted." (Doc. 26, #93). *See* Fed. R. Civ. P. 12(b)(6). GATX, on the other hand, moves for judgment on the pleadings under Rule 12(c). The legal standard is basically the same for both.

4

In resolving such motions, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That is so, however, only as to well-pled factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual enhancement'" or mere "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

At the pleadings stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Merritt] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted). That same is true as to a motion for judgment on the pleadings.

Here, Defendants seek dismissal on express preemption grounds. That is an affirmative defense. *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 720 (6th Cir. 2021) ("Generally, federal preemption is raised as an affirmative defense to a plaintiff's allegations." (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987))). Typically, a defendant may not seek dismissal under Rule 12(b)(6) based on an affirmative defense. *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012). A defendant can do so, though, "if 'the plaintiff's own allegations show that a

5

defense exists that legally defeats the claim for relief.'" *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012) (quoting 5B Charles Alan Wright, Arthur Miller, Mary Kay Kane & Richard Marcus, Federal Practice & Procedure § 1357 at 713 (3d ed. 2004)). The same is true for a motion for judgment on the pleadings. *See Myers v. City of Centerville*, 41 F.4th 746, 757–58 (6th Cir. 2022) (noting that, while "a plaintiff is generally not required to negate an affirmative defense in a complaint, the validity of such defenses may be apparent from the face of the complaint, rendering a motion for judgment on the pleadings appropriate") (cleaned up). Given its nature as a purely legal defense, express preemption often falls within that exception. The party asserting preemption, though, bears the burden of proving that dismissal is warranted. *See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 522 (6th Cir. 2012).

## LAW AND ANALYSIS

Constitutionally, Congress has the power to preempt state law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Congress exercised that power in enacting the HMTA. Where, as here, a statute has an express preemption provision, "the task of statutory construction must in the first instance focus on the plain wording of clauses, which necessarily contain the best evidence of Congress's preemptive intent." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001). But the Court must also remain mindful that the "interpretation of that language does not occur in a contextual vacuum." *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484–85 (1996)). Rather, the Court "must study the preemption language, the

6

surrounding statutory structure and regulatory scheme, and how Congress intended to affect business, consumers, and the law through these combined factors." *Id.* (cleaned up). That is the task to which the Court turns now.

Here, the HMTA contains two preemption provisions. The Defendants rely solely on the second preemption provision—49 U.S.C. § 5125(b). That provision, quoted above, preempts any "law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian Tribe about any of [a list of] subjects, *that is not substantively the same as* a provision [of the HMTA]." *Id.* (emphasis added). The list of subjects includes, for example, packing and handling hazardous material, along with "inspecting," "maintaining," or "testing" of a "container." *Id.* According to Defendants, Merritt's Ohio law negligence claims violate this preemption provision because a ruling in Merritt's favor on those claims would amount to Ohio law imposing a requirement on them, regarding one or more of these subjects, that is not included in, and thus is not "substantively the same as," the HMTA.

The first question, then, is whether a common-law negligence claim counts as a "law, regulation, order, or other requirement" for preemption provisions like the one here. While originally some confusion existed on that front, the Supreme Court cleared it up in *Riegel v. Medtronic*:

> Congress is entitled to know what meaning this Court will assign to terms regularly used in its enactments. Absent other indication, reference to a State's "requirements" includes its common-law duties.

552 U.S. 312, 324 (2008). In short, common-law tort causes of action, just like state regulatory pronouncements, are subject to preemption.

7

That leads to the second question—whether the duties Merritt seeks to enforce through his state-law negligence claims in this suit fall within the HMTA's list of preempted subject-matter areas. Answering that question requires a closer look at the Complaint and the specific counts Merritt asserts against each Defendant. But the short answer is yes. Here's why.

In Count I, Merritt alleges GATX acted negligently in thirteen specific ways. (Doc. 1, #6). But each of these ways shares a commonality—they relate to some aspect of how GATX or its employees operated, inspected, or secured the tank car. For example, he faults GATX's training on how to secure tank cars, the number of employees GATX assigned to the task, the way the tank car was "tighten[ed], seal[ed], and secure[d]," how the employees inspected the tank car, GATX's alleged failure to comply with the Association of American Railroads Tank Car Committee standards, GATX's failure to comply with an HMR, and its failure to ensure the tank car was fit for service. All of these fall within one or more of the subject matter areas specified in § 5125. Thus, each is subject to the preemptive force of that statute.

The pattern largely repeats as to BASF. Count III claims BASF was negligent in eleven ways. (Doc. 1, #9). The eleven largely repeat the first eleven types of conduct asserted against GATX. Merritt simply drops the last two. As a result, all of them again relate to the steps that BASF allegedly took in inspecting and securing the train car for shipment. Thus, every one is once again subject to the preemptive scope of that statute.

8

But that still does not answer the ultimate question here—what is the *effect* of the preemption provision on Merritt's claims? After all, the preemption provision does not prevent states from having *any* requirements. Rather, it prevents states from imposing or enforcing requirements "not substantively the same as" those in the HMTA regulations.

Here, the Defendants diverge a bit in their arguments. GATX claims that, the thirteen specific types of alleged negligence that Plaintiff cites either (1) conflict with an HMR (Doc. 31, #156 (asserting that Paragraph 26(g) seeks to impose a duty to inspect "at a greater frequency than required by federal regulation")), or (2) seek to impose a duty found nowhere in the HMRs (*id*. at #154–58). So, according to GATX, for each, Merritt seeks to use Ohio common law to impose a duty different from, or beyond, those found in the HMRs.

BASF, on the other hand, says that the negligence claims here are not substantively the same as the obligations under the HMTA for two reasons. First, like GATX, BASF argues that some of the identified allegedly negligent acts (e.g., not having enough employees) address topics not covered by federal regulations and thus seek to impose duties that go beyond those outlined in federal law. (Doc. 26, #102–04). But, unlike GATX, BASF separately argues that the state law negligence claims have a different (and lower) mens rea component than needed to show a violation of the federal regulations, and that they are thus not "substantively the same" on this ground, as well. (*Id*. at #101–02).

9

The Court agrees with the Defendants on the scope issue but does not agree with BASF on the mens rea issue. In other words, to the extent that Merritt is seeking to hold Defendants liable for conduct that is not prohibited or required by the HMTA (or the HMRs adopted under the HMTA), the Court agrees with the Defendants that Merritt cannot pursue that claim. But that may be somewhat of a moot point, as Merritt expressly disavows any intent to do so. (*See* Doc. 32, #182, n.15 ("Merritt disavows any intention to hold GATX liable in Count One based upon any duties substantively different than HMR, and none of the allegations in Count One should be construed to do so."); *see also* Doc. 29, #119 (same as to BASF)). The Court will hold him to that, and with that it sounds like the parties may agree on this issue (although not as to what the HMRs require). In short, the Court will not allow Merritt to predicate a negligence claim on any alleged conduct not addressed in the HMTA or HMRs.

But as to BASF's broader claim about the difference in mens rea requirements, BASF misses the mark. According to BASF, negligence under Ohio law allows recovery where there was "a failure to use reasonable care." (Doc. 26, #101). Violating the HMTA or HMRs, by contrast, requires a showing either that the person had "actual knowledge of the facts giving rise to the violation," or that "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." (*Id.*). A couple of thoughts on that—first, the Ohio requirement and the federal requirement don't sound all that different. But, more importantly, the Court concludes that this matter can proceed only as to claims where an HMTA or HMR

10

violation has occurred. Thus, if the mens rea component for establishing such a violation is higher than negligence, that heightened mens rea element will be a necessary showing here. More on that below.

That brings the Court to the last issue—the extent to which Merritt can rely on an HMR violation to assert negligence per se. Defendants argue that, because the HMTA does not create a private cause of action, the Court cannot allow Merritt to indirectly create one by using an HMR violation in that way. The Court concludes that the Defendants are right to an extent but for a different reason than they argue. Moreover, under the correct reasoning, Defendants' argument does not go so far as they suggest (i.e., precluding reliance on the HMTA or HMRs at all), but the argument does doom the negligence per se counts (Counts II and IV).

To explain that a bit more fully, the problem is not, as Defendants suggest, that the HMTA lacks a private right of action. After all, as Merritt correctly observes, he is not suing under the HMTA, he is suing under Ohio negligence law. (Doc. 29, #115–19). Instead, the problem is that the Ohio Supreme Court has said that violating administrative codes (rather than statutes) does not give rise to a valid negligence per se claim under Ohio law. *See Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120 (Ohio 2009). According to the Ohio Supreme Court, which is the definitive word on Ohio law, "we decline[] to extend negligence per se to administrative-rule violations." *Id.* at 124. That was so because allowing regulatory violations to support a claim of negligence per se "would in effect bestow upon administrative agencies the ability to propose and adopt rules which alter the proof requirements between

11

litigants." *Id*. And while *Lang* involved state administrative regulations, later cases show that the same rule applies to federal regulations. *See Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 672 (Ohio App. 2015) ("we further conclude that federal regulations—as opposed to an Ohio statute that sets forth a positive and definite standard of care—cannot be used as a basis for negligence per se under Ohio law"). That said, while a plaintiff cannot rely on administrative violations to support a claim of negligence per se, the Ohio Supreme Court also observed that such violations nonetheless "could be admissible as evidence of negligence." *Lang*, 909 N.E.2d at 124.

Merritt argues for a broader understanding of negligence per se, one that includes regulatory violations. In support he points to cases such as *In re E.I. du Pont de Nemours and Co. C-8 Pers. Inj. Litig.*, No. 2:13-md-2433, 2015 WL 4092866 (S.D. Ohio July 6, 2015). He notes that there the court observed that:

> [T]he United States Supreme Court has recognized that "[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318-19, [] (2005).

(Doc. 32, #177 (quoting *DuPont*, 2015 WL 4092866, at *24)). But while that may be the case in some states, or even most states, it is not true in Ohio. *See Lang*, 909 N.E.2d 120. And here Merritt is asserting Ohio-law negligence per se claims.

In sum, the Court must draw the same line that the Ohio Supreme Court did in *Lang*. And under *Lang*, Merritt cannot maintain a cause of action for negligence per se based on alleged HMR violations. Thus, his Counts II and IV, which assert solely such claims, fail as a matter of law, and the Court will dismiss those two counts

12

with prejudice. But, under *Lang*, Merritt can rely on HMR violations as evidence of negligence to support his claims in Counts I and III.[1]

Putting that all together, to succeed on a claim for negligence against GATX (Count I) or BASF (Count III) Merritt must show that one of the Defendants (1) engaged in conduct specifically prohibited by the HMTA (or an HMR promulgated under it), or (2) failed to perform some task specifically compelled by the HMTA (or an HMR promulgated under it). Other than that, his negligence claims are preempted and thus fail as a matter of law. Likewise, as his negligence per se claims in Counts II and IV rest solely on alleged violations of agency regulations, rather than statutory law, those claims also fail as a matter of law. But, to the extent that his negligence claims in Counts I and III rely on alleged violations of specific HMTA or HMR provisions, he can assert the Defendant's violation (if one occurred) as evidence of negligence—in other words, as evidence that the Defendant breached its duty to operate and maintain the tank car reasonably safely. Of course, even if Merritt ultimately proves negligence, he will also need to establish proximate cause and damages, but those are questions for another day.

Finally, some housekeeping is in order. First, GATX argues that Merritt has not plausibly alleged that GATX violated any HMRs. (Doc. 33). Merritt says that GATX first made the argument in reply and that the Court thus should not consider

---

[1] The negligence per se counts also fail for a separate reason. Negligence per se is not a separate cause of action, but rather "is a legal doctrine that allows the court to find the duty and breach elements of a negligence action established by virtue of the defendant's act or omission in violation of statute." *Grimberg v. Blackbird Baking Co.*, 2023-Ohio-313, at ¶ 32 (Ohio Ct. App.). In other words, negligence per se is merely a way of proving negligence in appropriate circumstances, not a separate claim.

13

it. (Doc. 34). Without reaching that latter issue, given the complexity of the regulatory scheme, and its fact-dependent nature, the Court concludes that this issue is one better addressed at summary judgment. To the extent that either Defendant contends that the undisputed facts show that no regulatory violation occurred, they are of course free to promptly move for summary judgment with supporting affidavits. And if no such violation occurred, the Court agrees, for the reasons explained above, that preemption would doom Merritt's claims. Having said that, because the Court is not further addressing the plausibility issue at this time, the Court **DENIES** the Motion for Leave to File Sur-Reply (Doc. 34) as **MOOT**.

Second, Merritt moved for a status conference to discuss the pending motions. (Doc. 36). Given the Court's Order, the Court **DENIES** that request as **MOOT**.

## CONCLUSION

For the above reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both BASF'S Motion to Dismiss (Doc. 26) and GATX's Motion for Judgment on the Pleadings (Doc. 31). In particular, the Court **DISMISSES** Counts II and IV **WITH PREJUDICE**. The Court further **DISMISSES** Counts I and III **WITH PREJUDICE** to the extent that they seek to impose liability for any conduct not expressly addressed in the HMTA/HMR's. Beyond that, the Court **DENIES** the Motion for Leave to File Sur-Reply (Doc. 34) and the motion for a status conference (Doc. 36) as **MOOT**.

14

**SO ORDERED.**

May 3, 2023
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**

15